**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11894

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

DIMITRI BEAUBRUN,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cr-80162-DMM-1

_____

Before JILL PRYOR, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Dimitri Beaubrun appeals his conviction for possessing a firearm and ammunition as a convicted felon. Beaubrun argues that 18 U.S.C. § 922(g)(1) violates the Second Amendment as

applied to felons such as himself with nonviolent histories. He contends that our decision in *United States v. Dubois* (*Dubois II*), 139 F.4th 887 (11th Cir. 2025), which reaffirms that, under *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), § 922(g)(1) does not violate the Second Amendment, is inconsistent with our earlier ruling in *NRA v. Bondi*, 133 F.4th 1108 (11th Cir. 2025) (en banc). Specifically, Beaubrun contends that in *Bondi* as-applied challenges to firearm regulations must be analyzed under the framework announced in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024). Thus, he argues that, under the prior panel precedent rule, *Bondi* controls and his constitutional challenge to § 922(g)(1) must be considered under that framework. Beaubrun also contends that *Florida Commissioner of Agriculture v. Attorney General*, 148 F.4th 1307 (11th Cir. 2025), reaffirms that the *Bruen/Rahimi* framework applies to all federal laws restricting arms-bearing conduct. In response, the government moves for summary affirmance, arguing that Beaubrun's challenge is foreclosed by *Dubois II* and *Rozier* and that *Bondi* and *Florida Commissioner* are not inconsistent with those decisions.

Summary disposition is appropriate either where time is of the essence, such as "situations where important public policy issues are involved or those where rights delayed are rights denied," or where "the position of one of the parties is clearly right as a matter of law so that there can be no substantial question as to the outcome of the case, or where . . . the appeal is frivolous." *Groendyke Transp., Inc. v. Davis*, 406 F.2d 1158, 1162 (5th Cir. 1969).

We review challenges to the constitutionality of a statute de novo. *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1043 (11th Cir. 2022).

Under our prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "To overrule or abrogate a prior panel's decision, the subsequent Supreme Court or en banc decision must be clearly on point and must actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (citation modified). Abrogation requires the subsequent decision to "demolish and eviscerate all the fundamental props of the prior-panel precedent." *United States v. Lightsey*, 120 F.4th 851, 860 (11th Cir. 2024) (citation modified).

Section 922(g)(1) prohibits any person who has been convicted of a crime punishable by a term of imprisonment exceeding one year from "possess[ing] in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1).

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual right to keep and

bear arms, subject to certain limitations. 554 U.S. 570, 595 (2008). The Court held that the District of Columbia's ban on handgun possession in the home, without any exception for self-defense, was unconstitutional as applied to a police officer who sought to keep a handgun in his home for self-defense. *Id.* at 574, 628–30. The Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626. The Court described such prohibitions as "presumptively lawful." *Id.* at 627 n.26.

Following *Heller*, we ruled in *Rozier* that statutory restrictions on the possession of firearms by felons under any and all circumstances, such as 18 U.S.C. § 922(g)(1), do not offend the Second Amendment. 598 F.3d at 771. In reaching this conclusion, we referenced *Heller*'s statement that "nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* (citation modified).

In *Bruen*, the Supreme Court rejected the "means-end scrutiny" test that several circuits had been using to apply *Heller*. 597 U.S. at 17–19. The Supreme Court clarified the proper test for Second Amendment challenges under *Heller*: (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and (2) "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24; *see id.* at 17. In doing so, the Court repeatedly

referenced the Second Amendment rights of "law-abiding, responsible citizens." *Id.* at 26, 38 n.9, 70.

Later, in *Rahimi*, the Supreme Court held that 18 U.S.C. § 922(g)(8)—which prohibits the possession of firearms by individuals subject to a domestic-violence restraining order—did not facially violate the Second Amendment because regulations prohibiting individuals who pose a credible threat of harm to others from misusing firearms are part of this country's historical tradition. 602 U.S. at 693–700.  The Court noted that lower courts had misunderstood the *Bruen* methodology and clarified that the Second Amendment allows firearm regulations "consistent with the principles that underpin our regulatory tradition" and are "relevantly similar to laws that our tradition is understood to permit."  *Id.* at 691–92 (citation modified).  The Court again noted *Heller*'s language that prohibitions on felons' possession of firearms are "presumptively lawful."  *Id.* at 699 (citation modified).

After *Bruen* but before *Rahimi*, we held in *Dubois I* that *Bruen* did not abrogate *Rozier*'s holding that § 922(g)(1) was constitutional because the Supreme Court in *Bruen* made it clear that its holding was a faithful application of *Heller*, which, in turn, "made it clear . . . that its holding did not cast doubt on felon-in-possession prohibitions."  *United States v. Dubois* (*Dubois I*), 94 F.4th 1284, 1292–93 (11th Cir. 2024) (citation modified), *vacated*, 145 S. Ct. 1041 (2025), *reinstated*, 139 F.4th 887 (11th Cir. 2025) (*Dubois II*).  The Supreme Court subsequently vacated *Dubois I* and remanded for

reconsideration in light of *Rahimi*.  *Dubois v. United States*, 145 S. Ct. 1041, 1042 (2025).

While *Dubois* was on remand, we issued an en banc decision in *Bondi*, ruling that Florida's law prohibiting the purchase of firearms by minors was not unconstitutional as applied to individuals between the ages of 18 and 21 because it was consistent with this nation's historical tradition of firearm regulation.  133 F.4th at 1111, 1117–30.  In doing so, we cited *Rahimi* and *Bruen* in explaining that "when a person challenges a law regulating arms-bearing conduct, courts must examine the historical tradition of firearm regulation in our nation to delineate the contours of the right."  *Id.* at 1114 (citation modified).

Then, in *Dubois II*, we again held that § 922(g)(1) did not violate the Second Amendment and reinstated *Dubois I*.  *Dubois II*, 139 F.4th at 888–89, 894.  In so holding, we determined that neither *Bruen* nor *Rahimi* abrogated *Rozier*, relying on our reasoning in *Dubois I* and noting that the Supreme Court in *Bruen* and *Rahimi* made clear that those decisions were in keeping with *Heller*.  *Id.* at 891–94.  We pointed out that these decisions did not concern § 922(g)(1) and that their only reference to felons was *Rahimi*'s reiteration that prohibitions on the possession of firearms by felons are "presumptively lawful," which suggested that "*Rahimi* reinforced—not undermined—*Rozier*."  *Id.* at 893.

Later, in *Florida Commissioner*, we found that a district court erred in concluding that two medical marijuana users had failed to state a claim in their as-applied Second Amendment challenge to

18 U.S.C. § 922(d)(3) and (g)(3), which prohibit "unlawful users" of controlled substances from being sold or possessing firearms. *See* 148 F.4th at 1311, 1321. At *Bruen*'s first step, we concluded that the plaintiffs' "conduct of attempting to purchase and possess firearms for self-defense purposes is clearly covered by the Second Amendment's plain text" and that, "while there is a history and tradition . . . of disarming convicted felons, nothing in the [complaint] indicates that [the plaintiffs] have ever been convicted of any crime" or had committed any crime beyond a misdemeanor. *Id.* at 1317. At *Bruen*'s second step, we similarly found that the government "ha[d] not pointed to any historical tradition of disarming those engaged in misdemeanant conduct," that the plaintiffs had never been convicted of a felony, and that the plaintiffs could not be considered dangerous people solely due to their use of medical marijuana. *Id.* at 1318–19. Significantly, we noted that the government "very well may prove at a later stage of litigation . . . that Appellants can fairly be considered relevantly similar to felons . . . who can categorically be disarmed." *Id.* at 1321 n. 16.

Here, we conclude that the government is clearly right as a matter of law that Beaubrun's as-applied constitutional challenge to § 922(g)(1) is foreclosed by *Dubois II* and *Rozier*. Beaubrun's attempt to evade these precedents based on their purported conflict with *Bondi* and *Florida Commissioner* is unavailing because neither *Bondi* nor *Florida Commissioner* involved a challenge to a felon disarmament statute, suggested that *Rozier*'s analysis of § 922(g)(1) was inconsistent with *Bruen* and *Rahimi*, or demolished and eviscerated *Rozier*'s fundamental props.

Accordingly, because the government's position is clearly right as a matter of law, we **GRANT** its motion for summary affirmance.  *See Groendyke*, 406 F.2d at 1162.